**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OSMAN MUKELJIC, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ALLARITY THERAPEUTICS, INC., THOMAS JENSEN, JAMES G. CULLEM, STEVE R. CARCHEDI, JOAN Y. BROWN, and JENS ERIK KNUDSEN, <br><br> Defendants. | **CASE No. 1:24-cv-06952-VM** <br><br> **MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DIEGO LOPEZ PAULLADA TO: (1) APPOINT LEAD PLAINTIFF; AND (2) APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL** <br><br> **CLASS ACTION** |

Diego Lopez Paullada ("Movant") respectfully submits this memorandum of law in support of his motion for an Order, pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a)     appointing Movant as Lead Plaintiff for the class of all purchasers or acquirers of the publicly traded securities of Allarity Therapeutics, Inc. ("Allarity" or the "Company") between May 17, 2022 and July 19, 2024, both dates inclusive (the "Class Period"); and

1

(b)    approving Movant's selection of The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel for the Class.

## INTRODUCTION AND BACKGROUND

On September 13, 2024, this action was commenced against Allarity, Thomas Jensen, James G. Cullem, Steve R. Carchedi, Joan Y. Brown, and Jens Erik Knudsen (collectively, "Defendants"). That same day, an early notice pursuant to the PSLRA advising class members of, *inter alia*, the allegations and claims in the complaint, the Class Period, and advising class members of their option to seek appointment as Lead Plaintiff was issued. *See* Ex. 1 hereto.

Allarity is a clinical-stage biopharmaceutical company that develops oncology therapeutics using drug-specific companion diagnostics generated by its Drug Response Predictor technology. Allarity's drug candidates include, *inter alia*, Dovitinib, a pan-tyrosine kinase inhibitor for the treatment of renal cell carcinoma ("RCC").  The Company's companion diagnostic technology for Dovitinib is referred to as "DRP®-Dovitinib" or "Dovitinib-DRP."

The complaint alleges that Defendants made false and/or misleading statements, and failed to disclose material facts, including that: (1) Defendants had overstated the Dovitinib NDA's continued regulatory prospects; (2) Allarity and three of its former officers had engaged in illegal, illicit, and/or otherwise improper conduct in connection with the Dovitinib new drug application ("NDA") and/or the Dovitinib-DRP premarket approval application ("PMA"); (3) the foregoing misconduct subjected the Company to an increased risk of regulatory and/or governmental scrutiny and enforcement action, as well as significant legal, monetary, and reputational harm; (4) following Allarity's announcement that it was, in fact, being investigated for wrongdoing in connection with the Dovitinib NDA and/or the Dovitinib-DRP PMA, the Company downplayed the substantial likelihood that an enforcement action would result from such investigation; and (5)

as a result, the Company's public statements were materially false and misleading at all relevant times.

On April 2, 2021, Allarity's predecessor parent corporation, Allarity Therapeutics A/S ("Allarity A/S"), announced that it had submitted a PMA to the U.S. Food and Drug Administration ("FDA") for Dovitinib-DRP.

On December 22, 2021, Allarity issued a press release announcing that it had submitted an NDA to the FDA seeking marketing approval for Dovitinib for the third-line treatment of RCC patients.

On February 18, 2022, Allarity issued a press release announcing that it had received Refusal to File letters from the FDA for the Dovitinib NDA and the Dovitinib-DRP PMA because "the NDA . . . and the PMA application . . . were not sufficiently complete to permit substantive reviews."

Despite this, Allarity continued to represent to investors and the market that it remained committed to pursuing the Dovitinib NDA and would work with the FDA to determine a clear regulatory path forward for resubmitting that application.

On June 29, 2022, during after-market hours, Allarity issued a press release announcing that, "[e]ffective immediately, the Company's Board of Directors has appointed [Defendant] Cullem, J.D., current [CBO], as interim [CEO] and [Defendant] Brown, CPA, current Director of Financial Reporting, as interim [CFO]" and that "[f]ormer CEO [Defendant] Carchedi and CFO [Defendant] Knudsen have stepped down from those roles to pursue other opportunities." The next day, Allarity disclosed in an SEC filing that Defendants Carchedi and Knudsen had either "resigned" or been "terminat[ed]" from all positions with the Company and its subsidiaries, while indicating that such "resignation" or "termination" may have been for cause, but without clarifying the same.

On this news Allarity's stock price fell $0.31 per share, or 19.02%, to close at $1.32 per share on June 30, 2022.[1]

On August 2, 2022, Allarity issued a press release announcing that "its Board of Directors has mandated a refocus of the Company's oncology pipeline strategy away from development of monotherapies" and, accordingly, "determined that advancing dovitinib as a monotherapy in adults is no longer commercially viable or in the best interests of its shareholders," citing "feedback that the Company recently received from the [FDA] from a Type C advisory meeting held in Q2 2022, regarding a potential Phase 3 clinical development path for dovitinib as a monotherapy third-line treatment for metastatic [RCC]."  Accordingly, the Company would no longer pursue approval of Dovitinib as a monotherapy.

On this news, Allarity's stock price fell $0.045 per share, or 3.688%, to close at $1.175 per share on August 2, 2022.

On February 6, 2023, Allarity disclosed in an SEC filing that, "[i]n January 2023, we received a letter to produce documents from the SEC and that stated that the staff of the SEC is conducting an investigation . . . to determine if violations of the federal securities laws have occurred" in connection with "disclosures relating to submissions, communications and meetings with the FDA regarding our NDA for Dovitinib or Dovitinib-DRP."

On this news, Allarity's stock price fell $0.009 per share, or 3.8%, to close at $0.228 per share on February 6, 2023.

On December 11, 2023, Allarity disclosed in another SEC filing that, "[o]n December 8, 2023, [Defendant] Cullem was terminated as [CEO] of Allarity . . . and all other positions with the Company and its subsidiaries" and that Defendant Thomas Jensen ("Jensen") had been appointed as the Company's new CEO on the same date.

---

[1] All stock price drops are made without reference to subsequent reverse stock splits.

On this news, Allarity's stock price fell $0.075 per share, or 13.37%, to close at $0.486 per share on December 11, 2023.

Then, on July 22, 2024, Allarity disclosed in yet another SEC filing that it had received a Wells Notice from the SEC's staff "relating to the Company's previously disclosed SEC investigation," advising that "[t]he Wells Notice relates to the Company's disclosures regarding meetings with the [FDA] regarding the Company's NDA for Dovitinib or Dovitinib-DRP, which was submitted to the FDA in 2021"; that, per the Company's understanding, "all conduct relating to the SEC Wells Notice occurred during or prior to fiscal year 2022"; and "that three of its former officers"—the same number of Company officers terminated during the Class Period—"received Wells Notices from the SEC relating to the same conduct."

On this news, Allarity's stock price fell $0.004 per share, or 2.38%, to close at $0.164 per share on July 22, 2024.

Finally, on September 13, 2024, Allarity disclosed in yet another SEC filing that, "[o]n September 12, 2024, the Company received a notice of resignation from [Defendant] Brown, its [CFO], effective September 12, 2024."

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Movant and other Class members have suffered significant losses and damages.

## ARGUMENT

### I.    MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable

presumption" that the "most adequate plaintiff" to serve as lead plaintiff is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice …;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movant satisfies all three of these criteria, and thus is entitled to the presumption of being the "most adequate plaintiff" for the Class.

### A. Movant Is Willing to Serve as Class Representative

Movant has filed herewith a PSLRA certification attesting that he is willing to serve as representative of the class and remains willing to provide testimony at deposition and trial, if necessary. *See* Ex. 2 hereto. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class.

### B. Movant Has the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff … is the person or group of persons that … has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Of the *Lax*/*Olsten*-styled[2] factors in determining the largest financial interest, the financial loss is the most significant factor. *See In re*

---

[2] *Lax v. Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

*Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness*, *Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005).

Movant lost approximately $35,930.46 in connection with his purchases of Allarity securities. *See* Ex. 3 hereto. Movant is not aware of any other movant that has suffered greater losses in Allarity's securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

**C. Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification – a *prima facie* showing that Movant will satisfy the requirements of Rule 23 is sufficient. *Fuwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing is required). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

**1.    Movant's Claims are Typical**

The Rule 23(a) typicality requirement is satisfied when a plaintiffs' claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiffs' claims are based on the same legal theory. *See In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id.*

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, alleges that Defendants violated the Exchange Act by issuing false and misleading and failing to disclose material statements about the Company's business. Movant's interests are closely aligned with the other Class members' and Movant's interests are, therefore, typical of the other members of the Class.

### 2. Movant Is Adequate

The adequacy of representation under Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and made this motion to be appointed as Lead Plaintiff. Movant is not aware that any conflict exists between his claims and those asserted on behalf of the Class. Movant also sustained substantial financial losses from his investments in Allarity securities and is therefore extremely motivated to pursue claims in this action.

### D. Movant Is Presumptively the Most Adequate Plaintiff

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The presumption that Movant is the most adequate Lead Plaintiff is not, therefore subject to rebuttal. Accordingly, Movant has suffered financial losses and has the largest financial interest in this case of any timely lead plaintiff.

The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses Defendants could raise against him that would render Movant inadequate to represent the Class.

Further, Movant has over 8 years of investing experience. Movant primarily invests in biotech, as he is determined to make an impact on the world through investing in companies finding cures for cancer and other diseases. Movant is currently employed as a Sports Manager and resides in Switzerland.

## II.   MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected Rosen Law as Lead Counsel. The firm has been actively researching Movant's and the Class's claims, including reviewing publicly available financial and other documents while gathering information in support of the claims against Defendants. Furthermore, the firm has an extensive history bringing significant recoveries to investors and is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in this District and in other courts throughout the country. *See* Ex. 4 hereto. The firm has prosecuted numerous securities fraud class actions and other complex litigation and obtained substantial recoveries on behalf of investors.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

**CONCLUSION**

For the foregoing reasons, Movant respectfully requests the Court issue an Order: (1) appointing Movant as Lead Plaintiff of the Class; (2) approving Movant's selection of Rosen Law as Lead Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

Dated: November 12, 2024          Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
/s/ Phillip Kim
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Phillip Kim